Peter Moinett *v.* Lewis Days.

PETER MOINETT *v.* LEWIS DAYS.

STATEMENT OF CASE: Moinett came to Tennessee to buy lands, Days pretended to be his friend, in helping him to make the purchase of a farm, the property, in fact, belonged to Mr. Longmiller; the transaction was completed with Arlege, who assigned the $400 note of Moinett for purchase money to Days as his share in the profits on the sale. Moinett seeks to enjoin the collection of the same.

1. PRINCIPAL AND AGENT. *What constitutes.* Days, under the circumstances of this case, is the agent of Arlege to sell the land, and received the $400 note as his part of the profits on the speculation.

2. SAME. *Same. Agent not entitled to profits. When.* Where a party acts as agent of another, he will not be entitled to make a profit for himself by taking advantage of his position; he holds such profits for the benefit of the party whose confidence he has abused. In cases of fraud and undue advantage the rule is rigidly enforced. The collection of the note is perpetually enjoined.

Cases cited: Kuch *v.* Sanford and Fox *v.* Macrith, 1 Lead. Cases in Eq., 97, 208.

---

FROM FRANKLIN.

---

Appeal from the Chancery Court. B. M. TILLMAN, Chancellor.

MARKS & FITZPATRICK for Moinett.

JNO. FRIZZELL for Days.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed to enjoin the collection of, and have delivered up and cancelled, a note for about

$400, alleged to have been fraudulently obtained under substantially the following circumstances:

Moinett and another Frenchman came from Ohio to Tullahoma seeking to buy homes. Days, who had lived in the country perhaps six or seven years, hearing of their arrival, desired to make their acquaintances under the pretext of befriending them and rendering them assistance in the purchase of homes at reasonable prices. He professed to be anxious to aid in procuring Northern immigrants to that section of the country, indicating prejudices decidedly in their favor and against the native citizens.

The proof shows, by a decided preponderance, that Moinett was induced by the professions of disinterestedness and disposition to serve men coming from the North free of charge, actuated by the laudable motive of protecting them from frauds and advantage being taken of their ignorance of the country and the people, and a desire to introduce what he deemed a better population into the country, to place himself under the advice and direction of said Days, and to take the benefit of his agency and assistance in purchasing the desired land. The two Frenchmen had gone in the country to look at a tract of land which was in the market, and on their return Days told them he had found a place to suit them, of about 250 acres, owned by one Clem Arlege, that he asked $2,000 for it, and that it was cheap at that price. Next day Arlege came to the town of Winchester, when the title bond was executed—$250 of the money

paid in cash, a note for $950 given on short time, and for the balance of the money, $800, two notes of $400 each, due the same day, were given. It seems that Moinett had possibly some suspicion at this division of the last note in rather a pecular way, but Days, acting as his friend and agent, explained all this by stating that Arlege owed him $400, and wanted to pay him by assigning one of the notes to him, and thus the matter ended.

It turns out in the proof, however, that when the contract was agreed on, Arlege did not own the land at all; had learned what the owner would take for it, Mr. Longmiller, to-wit, the sum of $1,200, and had probably, after he learned from Days this chance to sell, got Longmiller to agree to give him the preference in purchasing it, and on the same day Arlege sold to the two Frenchmen; he bought it from Longmiller, as appears from the deeds and bonds in the record, paying him probably the $250 received from Moinett and his brother Frenchman, and assigning the $950 note to him for balance. This was all well enough.

But it further appears in the proof, beyond all question, that the disinterested Days, the respondent in this case, was to have, and did get, the $400 for his share in the transaction, and this note is the one sought to be enjoined and cancelled. He, it is true, somewhat faintly denies this in his answer, but his deposition is taken, in which he does not explain how he got the note, although it had been shown by

complainants, as charged in the bill, that the note was obtained in this way.    In addition to this, his testimony is contradictory, evasive and very unsatisfactory in tone, to say the least of it.    Besides it is shown that Arlege was a citizen of Winchester when the proof was being taken, and could readily have explained the whole transaction in reference to the note, and, in addition, could have shown that Days was not his agent for obtaining a sale of the land, and acting really in his interest, while pretending to act for the strangers he had undertaken to protect from unscrupulous traders.

We have given the result to be arrived at from the whole testimony in the record, and from it we think it clear that Days was the agent of Arlege to sell the land, and got this $400 note as his part of the profits of the speculation; that at the same time he pretended to act as the agent of the complainant and the other Frenchman, and thus was enabled to carry out his purpose, by confidence reposed in him by them, obtained by professions of disinterested motives.

The principle is now well settled, that a party acting as agent of another can not be permitted to make a profit for himself, by taking advantage of his position, as that it needs no authority to sustain it. The cases will be found collected in notes to cases of *Kuch* v. *Sandford* and *Fox* v. *Macrith*, 1 Lead. Cases in Eq., 97, 208.    That such party holds such profits for benefit of the party whose confidence he

has abused is equally well settled, and where circumstances of fraudulent bad faith and undue advantage is found, the rule is rigidly enforced. Applying these familiar principles, we have no difficulty in holding with the Court below that the injunction granted in this case should be made perpetual, and the note complained of be delivered up to be cancelled.

The decree below is affirmed with costs of this and Court below.